An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF DISCIPLINE OF RICHARD P. SCHULZE, III, BAR NO. 5767.

No. 68480

**FILED**

DEC 2 3 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

*ORDER OF SUSPENSION*

This is an automatic review of a Northern Nevada Disciplinary Board hearing panel's findings of fact, conclusions of law, and recommendations for attorney discipline, arising from attorney Richard P. Schulze's appointment as trustee of a special needs trust and representation of the guardian of the ward of that trust.

In 1994, Ralph and Barbara Preece created a special needs trust that provided for the care of their son, James Preece, who suffered a brain injury at birth resulting in diminished mental capacities. Preece maintained employment but required constant care. After Ralph and Barbara's death, Cheryll Bayler became a co-guardian, and ultimately sole guardian, of Preece. In September 2006, Schulze began representing Bayler in her capacity as Preece's guardian. On April 24, 2007, the district court (Judge Hardy) appointed Schulze as trustee of the Preece trust, subject to certain conditions that included an annual accounting of the trust and the development of a budget for Preece's expenses. No budget consistent with the district court's order or accounting of any kind was filed between April 2007 and January 2012.

In the summer of 2009, Bayler told Schulze that she intended to move to Wyoming with Preece. Schulze advised Bayler that she needed court approval to remove Preece from Nevada because of the possible

15-39459

detrimental effects such a move could have on him. Schulze testified at the disciplinary hearing that Bayler terminated his representation at that time. Shortly after Bayler and Preece moved to Wyoming, Schulze took measures to sell Preece and Bayler's residence, which was owned by the trust. Schulze did not notify or seek permission from the district court to sell the residence because he did not believe that he had a duty to do so. The proceeds of the sale were deposited into the trust. In September 2009, Schulze paid Bayler for costs related to the move to Wyoming and rent to the owner of the home where Bayler and Preece lived. Schulze also continued to pay Bayler a monthly sum of $3,000 for her services as guardian. Several months later, in January 2010, there was a domestic disturbance at Bayler and Preece's residence, resulting in Preece's removal from the home and admission to a psychiatric hospital. Preece was eventually moved to a group home. Schulze paid the costs of Preece's hospitalization and stay at the group home in the amount of $26,000. Schulze also continued to pay Bayler her caretaking fee of approximately $3,000 per month, although Preece did not live with her during that time. Schulze continued paying Bayler's fee based on her assurances that Preece would soon be living with her. However, Preece never again lived with Bayler. Schulze also continued to pay Bayler's rent. In January 2011, nearly one year after Preece was removed from Bayler's care, Schulze informed Bayler that he would no longer pay her caretaking fee.

In January 2012, Schulze filed a report and accounting of the trust and, for the first time, advised the district court of Bayler and Preece's move to Wyoming and sale of the Nevada residence. In addition to his trustee fees ($400 per month) Schulze requested additional attorney fees and termination of the guardianship pursuant to NRS 159.191. The report showed that, inconsistent with Schulze's assertion that Bayler

SUPREME COURT
OF
NEVADA

(O) 1947A

2

terminated his representation in 2009, substantial amounts of his request for additional fees consisted of "post-termination" work that could only be related to his representation of Bayler. Between 2007 and 2008, the trust was valued at approximately $450,000. In June 2012, the trust had approximately $140,000 in assets.

Schulze's January 2012 report generated concern by the district court (Judge Walker) and an investigation into Schulze's handling of the trust and Bayler's actions as guardian was launched. After the investigation, the district court removed Bayler as Preece's guardian and Schulze as trustee and appointed the Washoe County Public Guardian as guardian and trustee. Ultimately, the district court issued a contempt order against Schulze and Bayler. Among other things, the district court noted in the order that Schulze minimized his failure to file annual trust accountings, which led to "massive waste" of trust funds. The district court also concluded that his representations during the contempt proceedings were "transparent attempts to minimize and prevaricate in order to recast history and/or to project blame for his non-reporting on either the Court or his client (Bayler)" and that some of his testimony was belied by the evidence. The district court sentenced Schulze to serve two consecutive terms of ten days in jail, suspended for three years on the condition that he repaid all monies expended by the trust between 2007 and 2012. By the time of the disciplinary hearing, Schulze had repaid the trust $26,223.41.

The panel found that Schulze violated RPC 1.7(a)(1), (2) (conflict of interest: current clients), RPC 3.3 (candor toward the tribunal), and RPC 8.4(c), (d) (misconduct: engaging in conduct involving dishonesty,

fraud, deceit or misrepresentation and engaging in conduct that is prejudicial to the administration of justice).[1] The panel did not identify any specific aggravating factors but noted that Schulze expressed little remorse for the effect that his actions had on the ward of the trust. Further, the panel gave "some weight" to mitigation evidence showing that several of Schulze's family members experienced severe health issues, including the death of his mother and brother and ongoing medical issues involving his wife. Based on the violations found, the panel recommended that Schulze be suspended from the practice of law for six months but that the suspension be stayed and that he be issued a public reprimand. Further, if Schulze is the subject of additional bar complaints during the period of stayed suspension, the panel will reconvene to determine whether additional discipline is warranted. The panel also recommended that Schulze pay the costs of the proceeding, excluding bar counsel and staff salaries.

The State Bar has the burden of showing by clear and convincing evidence that Schulze committed the violations charged. *In re Discipline of Drakulich*, 111 Nev. 1556, 1566, 908 P.2d 709, 715 (1995). We "employ a deferential standard of review with respect to findings of fact." *In the Matter of Amendments to Court Rules Regarding Attorney Discipline, Specifically SCR 105*, ADKT No. 0505 (Order Amending Supreme Court Rule 105, November 5, 2015), as we do in civil cases, *see* SCR 105(3)(a) ("To the extent not inconsistent with these rules, as appeal from a decision of a hearing panel shall be treated as would an appeal

---

[1]The panel found that Schulze did not violate RPC 1.5 (fees), RPC 1.6 (confidentiality of information), or RPC 4.1 (truthfulness in statements to others) as alleged in the complaint.

from a civil judgment of a district court. . . ."). Our review of a disciplinary panel's recommendations is de novo, SCR 105(3)(b); *In re Discipline of Stuhff,* 108 Nev. 629, 633, 837 P.2d 853, 855 (1992), and therefore we "must examine the record anew and exercise independent judgment," *In re Discipline of Schaefer,* 117 Nev. 496, 515, 25 P.3d 191, 204 (2001).

While we conclude that substantial evidence supports the panel's findings of misconduct, *see generally Sowers v. Forest Hills Subdivision,* 129 Nev., Adv. Op. 9, 294 P.3d 427, 432 (2013) (observing that this court will uphold district court's factual findings "as long as these findings are not clearly erroneous and are supported by substantial evidence"); *Weddell v. H2O, Inc.,* 128 Nev., Adv. Op. 9, 271 P.3d 743, 748 (2012) (same), we do not agree that the panel's recommended discipline is appropriate under the circumstances, *see State Bar of Nev. v. Claiborne,* 104 Nev. 115, 213, 756 P.2d 464, 527-28 (1988) (observing that purpose of attorney discipline is to protect the public, the courts, and the legal profession, not to punish the attorney). Schulze's actions caused the significant depletion of trust funds designated to take care of Preece, a vulnerable, mentally disabled person. Further, the contempt order shows that when called to explain his actions related to his management of the trust, he was not candid with the district court. To his credit, Schulze has repaid the trust, but that does not excuse or diminish the harm caused by his actions. Therefore, we conclude that a term of actual suspension is warranted. *See* ABA Standards for Imposing Lawyer Sanctions, *Compendium of Professional Responsibility Rules and Standards,* Standard 4.32 (2015) (indicating that suspension is appropriate for failing to avoid conflicts of interest where a "lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict and causes injury or potential injury to a client"); *id.* Standard 6.12 (indicating

that suspension is appropriate where a "lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding"). Accordingly, we hereby suspend Richard P. Schulze from the practice of law for one year commencing from the date of this order. Further, Schulze shall pay the costs of the disciplinary proceeding, excluding bar counsel and staff salaries, *see* SCR 120, and shall comply with SCR 115 and SCR 116. The State Bar shall comply with SCR 121.1.

It is so ORDERED.

_____, C.J.
Hardesty

_____, J.  _____, J.
Parraguirre        Douglas

_____, J.  _____, J.
Cherry          Saitta

_____, J.  _____, J.
Gibbons         Pickering

cc: Chair, Northern Nevada Disciplinary Panel
   Bar Counsel, State Bar of Nevada
   Lemons, Grundy & Eisenberg
   Kimberly K. Farmer, Executive Director, State Bar of Nevada
   Perry Thompson, Admissions Office, United States Supreme Court